Good morning, your honors, Mr. Badaver-Dean. May it please the court, my name is Kirsten Madsen and I represent the state of Montana in this appeal. I would like to reserve three minutes for rebuttal. Appellants ask that you reverse the decision of the federal court to grant habeas relief and allow the state to retry Mr. Hartman on the nine criminal counts he was facing in February of 2021. In your de novo review, the state urges you to conclude that the trial court in this case did not abuse its discretion in declaring a mistrial, where the court could not reconvene trial for three weeks, a period of time longer than the trial itself, and where the ends of public justice would have been seriously impaired by cutting in half the amount of time the defense attorney said the defendant needed in order to meaningfully testify. I have sort of a lead-in question. I tried civil and criminal cases for 25 years before I took the bench. I've now been on the bench for almost 30 years. I have never seen a criminal case where the trial judge imposed time restrictions on the defendant. Have you? I have a fraction of the experience that you have, your honor, but I have seen reasonable limits imposed in criminal trials and other cases. I think the limit that was imposed in this case was a result of the COVID-19 pandemic. The court was, at the time of trial, then 11 months into a backed-up docket. It was dealing with a rented trial space that wasn't guaranteed to be available. It had had to bring in another court reporter. It's also February in Montana. It's snowy. It's dark. There are concerns about juror safeties traveling in the dark. I think these are all considerations that were weighing heavily on the trial court, which is why it asked several times to the parties, how much time do you need? That's a very articulate list of reasons that affect this particular case, none of which excuse not allowing a defendant in a criminal case to take the stand in his own defense. Do you have a case that says that? That because there's COVID around or limited trial schedule or you're in a small rural county in Montana or because it's cold outside, a judge can say it manifests necessity for a mistrial by not allowing a defendant to testify in his own behalf? Your Honor, I'm not aware of such a case, and I think that that was one of Judge Koff's primary concerns was he could not cut off the defendant's need to testify. He has an absolute constitutional right to do so, and Judge Koff was very concerned about preserving that right and also, to my earlier point, faced with the realities of the time that this trial was occurring, and he could not accommodate the extension that was being requested that was necessary in order to allow. On reconsideration, when the judge says, no, I'm not going to do this, there was a motion for reconsideration, correct? Correct. And where before defense was saying we need 90 minutes or something like that, they now say, I've met with my client and we can do this in 30 minutes, and the judge refused. Your Honor, are you posing a hypothetical, just because I think the time limits are slightly off from what the record shows. Tell me what they were. So on Thursday evening, the defense attorney said that they needed three hours in order to meaningfully testify. The court listened to the argument, said we'll come back tomorrow morning, everybody be here before the jury gets here, we'll have an additional argument. The court invited additional argument, the defense offered nothing further, the state offered its argument, which was that it would like equal time. The court then went through a dissertation of why it did not have additional time and declared a mistrial. At that point, after the court had already said the words mistrial and said that it intended to sanction the defense counsel, that's the point at which the suggestion of 90 minutes was offered. So it wasn't offered, for example, first thing Friday morning when the judge is saying, do we have any additional argument, right? So that would have been the time to say, Your Honor, I've conferred with my client, we're sure that we can take less time than we asked for last night. What's your best case for justifying a conclusion of manifest necessity in a mistrial based on the court's schedule? I'm not aware of a case that's specific to scheduling and a mistrial, but I do think that there are a number of cases that discuss the considerations that go into declaring a mistrial. And when you look at the factors that were, that have been laid out in those cases and were applied in this case, that the district court judge was acting within his sound discretion in declaring this mistrial. Did you try the case? I did not, Your Honor. Do I understand correctly, whatever the constriction, et cetera, on time limits, that when the defense moved for reconsideration, the prosecutor said they had no objection? Is that right? As I understand the record of the prosecutor, the state said, we don't take a position. We'll do everything we can to get this case in. We don't want to come back and try it again. We don't want to do this over. You know, we have elderly victims. How's like the lack of an, at best, the lack of an objection, right? Sure. And, but the judge couldn't accommodate that. I don't think at that point, you see, for example, the judge says during the reconsideration request, he says, I'm going to take a recess and go back and consider what's just been said to me. He ultimately doesn't take the recess, but he goes on for several pages of the transcripts. I mean, I would submit that that's him deliberating aloud in court about what to do. And in that discussion, you see him really struggling with concerns, you know, that are outlined, for example, in, um, by justice story and the Perez case, right? About the need for there to be, um, public confidence in, in, in the system, the need for there to be just trials or fair trials that ended just results. But the question is manifest necessity. I mean, that's, that's the standard, right? Right. So when he finally says, no, I'm just going to give you the mistrial, what he has in front of him is a request for 90 minutes, uh, for the defendant to testify plus whatever the state's going to do. Let's assume that the state is going to take about the same amount. So he, we, we need another three hours of court time. We're on Friday, Friday morning, uh, and there's nothing I think to prevent him from, I mean, we can have court on Saturday, maybe his, maybe his kid has a baseball game, but I don't know that that's manifest necessity. Tell me why that's manifest necessity. So two quick points. Um, I, I, it wasn't simply three hours there. That's, you're talking about the amount of time that was requested for the defense to testify. The state had been planning. It's now, it's now an hour and a half because he said, no, I can do it an hour and a half, your honor. And that's, that's the request that's now in front of him because it starts out at three hours, but he now says it's an hour and a half and the judge says, still, no, I'm not going to do it. So the judge then has in front of him an hour and a half plus whatever cross, I apologize. I combined the hour and a half for the direction of the hour and a half for the cross for a total of three, um, as opposed to, yeah. And so it wasn't just the defendant's testimony. The state was planning for rebuttal. It had saved time for that purpose. So there was also going to be the rebuttal testimony. The court had before it 60 plus jury instructions that had not been settled. Oh no, no. I'm talking the three hours in addition to whatever else is going to happen. Correct. Right. So I just want to be clear that we're not talking about just three hours, but we are talking about three extra hours. The other issue that was facing the court though, is that, that Mr. Baderudin had said the night before he had engaged in ineffective assistance of counsel specifically with regard to his defendant, to his client's desire to testify, which is his absolute right. And in addition to that, that morning the court had said it felt that this had been done deliberately and it intended to impose sanctions. So at that point you have an attorney who has both said he's been ineffective and is facing potentially five figures in sanctions. I mean, the court said the cost of this nine day trial, which would have been substantial trial. And the court, again, I think you, you see Judge Cuff saying this in the record. I don't know that I can do this. I don't know that you can make a waiver at this point of these potential issues with your counsel for the very reason that I now don't trust that when you say it's 90 minutes, like what, why was that not provided first thing this morning before I said this, right? At this point now I have serious questions about whether I can rely on you to adequately represent what it is that the defendant needs in order to testify. Does the record tell us what time the final determination was made? This was a Friday, right? Correct. In the morning? In the morning. Do we know the time? You do. So they met that morning around eight something, I believe, 8, 19 a.m. and the jury was ultimately dismissed based on approximately a page worth of transcript at 925 a.m. Does the record tell us what that judge did for the rest of the day? There's no court reporter's transcript of what he did for the rest of the day, but as said about drafting the order, memorializing the reasons for the mistrial, which was issued later that afternoon. Was there a trial waiting to go, a criminal trial waiting to go? Not on Friday afternoon, but the following week there was a criminal trial waiting to go with a defendant who was incarcerated, whose prior trial had itself ended in a mistrial and that trial had been continued five times. At least a couple of those times were because witnesses or parties themselves had COVID, right? Which I think is one of the things that was weighing on Judge Cuff here is if I recess this trial, right? I just say, okay, he's got to have three hours or even 90 minutes. I don't know for sure that I'm going to get these jurors back at any minute. Somebody could get COVID. I don't know that this trial space is going to be available. You know, one of his concerns he expresses is that the trial space, the community center was then being scheduled intermittently as a vaccine clinic. So this was a very unique set of circumstances that were weighing on the trial court. And I think, you know, I guess my overarching point here would be this is the reason that we look to the trial court and it's not that his decision is beyond review by any means. Of course, of course it is subject to review and of course it's subject to inspection. But the numerous considerations that were going into Judge Cuff's decision are the reason why we give discretion to trial court judges, right? They are tagged institutionally with the ones who are sitting there who know best whether this is likely to work out. And you know, Judge Cuff had been sitting there for nine, eight days, I guess at the time he declared the mistrial, watching counsel day in and day out. I think he was reasonably suspect that 90 minutes was not a realistic goal. Also, I think, you know, as Judge Christensen observed, although he faults Judge Cuff for not taking Mr. Bader-Rudin at his word, it was really only the defendant and his attorney that knew exactly what needed to be said and what needed to be testified to. And on that point, the defense counsel had said he needed three hours. And I think that it was reasonable for the court to rely on defense counsel's representation the night before when he was asking for more time. You have about three minutes. You want to save it for rebuttal? I do. Thank you for your argument. Counsel. It was easier to find sooner or earlier. Um, your honors, with regard to what is in the record and what is, oh, I forgot. Good morning. My name is Shandor Bader-Rudin. I represent the appellee, Kip Hartman. I ask the court to affirm the district court below. With regard to what is and is not in the record, United States versus bonus holds that that obligation to make that record and establish those facts goes to the prosecutor. If they want to avoid the double jeopardy bar, if they want to re-prosecute someone who's had a mistrial declared over his objection, they need to make their record. There's nothing in the record about this vaccine clinic. That's made, I'm not made up. That is unsupported by any fact in the record. Uh, it may be true, but you're just saying it's not in the record. I don't know whether it's true, but it is definitely. You said it was made up. Um, that sounds as though it's false. I corrected myself. I shouldn't have said it was made up. What I meant to say is I've never heard anything of any vaccine clinic. Um, but what is in the record is the court's Monday trial calendar, which started at 1 28 PM, they, the court had available those three extra hours. What's also on the record in, um, volume 12 in the, in the last day of the trial day nine is that we can make the jurors come in on Saturday. Um, there was time to do this, this case in the 90 minutes that, uh, trial counsel requested, I was trial counsel in the 90 minutes that trial counsel requested, there was also, if we couldn't have the 90 minutes, we should have the, the, the trial court should have given the defendant the option of proceeding with the 15 minutes he had. Um, I don't know about Ms. This court gives both parties in this case, 15 minutes to tell it everything it needs to know about this case. Mr. Hartman could have done that with the jury. He could have taken his 15 minutes and told them everything they needed to know about his case. Um, and about those 15 minutes, um, the trial, I was operating under a colossal misapprehension of fact. I had 116 minutes. I didn't know that the trial court miscalculated the time and I've set that forth, uh, for the court in, um, uh, in the record at, um, supplement, uh, volume one of the supplemental record at 165 and volume two at the supplemental record, uh, at 247. We had 116 minutes. They gave my, my, uh, 90 minutes to the state in error. But if I had known about the 116 minutes, we could have just proceeded with the trial on time. You tell me, I take it this was not a case where periodically during the defense presentation, the judge would remind counsel, well, you only have this amount of time down to this amount of time. You don't only, did that happen? Um, it happened twice during the course of eight days. And during the, during the course of these reminders, um, the court would give inconsistent information. For example, on day, um, uh, the, the court said that it was all time talking counted, and then subsequently the court said, well, not all time talking counts. If you're in chambers or if we're, you know, taking a break, that time doesn't count, all these changes inured to the benefit of the state, not to the defense. Later on, on day seven, I was, uh, the, the court advised the parties, you know, on day five, I didn't tell you guys, but on day five, I went from a computation based on days, four days for each to one based on hours and minutes. And we were told that on day seven. Um, so no, there were not consistent reminders about how much time was remaining, um, but what there was consistently throughout this case was trial counsel, uh, advising the trial court, complaining to the trial court and crying and moaning to the trial court that he did not have enough time to present, to both confront the witnesses and to present his defense in the time allotted. And that became a, um, trial counsel was especially vocal, um, on Friday when it, when it was patently obvious that the state was going to keep going and the state was in the driver's seat the whole time, they said, well, every witness they presented on direct required, uh, required me to choose between confront confrontation or, um, every second spent on confrontation was a second or minute less. They were going to require crossing defense witnesses. It was win-win for them. Um, and what the trial court said, you were the trial counsel. Yes, sir. Okay. Um, what the trial court said, don't mind you saying I, you don't have to be that Yes, sir. You were the lawyer there. I was. And what do we make of your concession that, um, uh, or statement that you may have engaged in ineffective assistance of counsel? I think it was consistent with my statements earlier in the case and from the beginning of the case that I was ineffective because it was impossible for me to both adequately confront the witnesses, uh, against my client, as well as reserve enough time to present his defense. It's a fundamental component of our adversary system. State puts on their witnesses, defense puts on their witnesses, jury sees where the truth lies and lets us know. And I couldn't do it. I, I couldn't do it. That's why I was ineffective. And so that's a very special form of ineffective assistance to counsel. You were arguing, not that you were no damn good, you were arguing that you were prevented from doing your job and were therefore ineffective. Am I understanding that correctly? Yes, sir. And that's what both the U S district court and the Supreme court of Montana said, counsel said he provided ineffective assistance by failing to complete his case, um, on time. And the Supreme court of Montana said, counsel said he failed to provide or safeguard Hartman's right to the effective assistance of counsel because he failed to leave enough time. Not because, uh, of some other reason he didn't subpoena appropriate witnesses. He, uh, he didn't make an emotion to suppress, you know, he seemed intoxicated. It, none of those, none of those defects were present. And I think it's important to mention on day nine, excuse me. Yes. Day nine, the morning of the last day of trial. Um, the court said, this is a situation where effective assistance of counsel does not apply. Isn't that right? Isn't that what you said yesterday? You said it's a structural error issue where effective assistance of counsel doesn't apply. Isn't that right? To which I responded, that is correct, your honor. We weren't talking about effective assistance. We were talking about structural defects and we offered 15 minutes waiver of a right to testify, 90 minutes. We offered a way around that structural defect and the district court found, you know, as soon as the witness, uh, defendant takes the stand, there's no structural defect. We could have, we could have gotten it done. Um, and my client was very clear. Conflict, no conflict waiver. I want to proceed with this jury, with this verdict, with this trial. Today, he was very clear. And, um, to the extent there was any conflict, number one, but the trial judge in, in our state, in Montana, the trial judge can file briefs, um, on writs. He told the Supreme court of Montana and myself, I didn't sanction him. There's no sanction against him. Um, to the extent there was a sanction, the, uh, Holloway versus Arkansas and Glasser versus the United States. There's a procedure. First, the court is to make a specific and searching inquiry of the defendant. Mr. Defendant, do you understand the nature of this conflict? It happened in United States versus Elliot. Lawyer's sitting there. He's got one client at the table, pointing his finger at the witness. Got another client on the witness stand, pointing his finger at the defendant. And the, and the court said, Whoa, Whoa. Um, Mr. Elliot, do you understand what's happening here? Your lawyer is conflicted. He's, he's, he's serving, uh, different interests that are direct conflict with one another and offered Mr. Elliot the opportunity to seek new counsel, uh, consult with independent counsel or waive the defect and proceed to verdict and Mr. Elliot chose not to waive and the court made the right decision. The point of all that talk is that this conflict, if that's what it is, it was waivable. And it wasn't a conflict because, uh, the, the state says, well, the sanction was going to somehow disappear if we finished the trial on, on time. Not at all. That's not in the record. Um, and the fact that the U S district court granted this petition sanctions still there, sanctions still coming. The, the, the, the result of this trial had absolutely nothing to do with the sanction or non-sanction. Um, and, and so if anything, our interests were aligned, we both wanted to finish the trial. The reason, uh, and this is set forth, uh, nicely in, uh, note three of the district court's opinion. That's in, uh, uh, the record at page 21. The reason for this trial is there wasn't enough time left in the case. The district, uh, the, the trial court said it itself, the long and the short of it is I don't have a place to put the, put this trial for at least three weeks. We were in a situation where we cannot complete it in the allotted time. Said that twice. The Supreme court of Montana said the trial court determined that a mistrial was necessary because Butterredine failed to reserve adequate time to allow Hartman to testify. And then the court explained, the trial court explained what was really going on. I have an overreaching, overarching obligation to the system in general, to these other litigants before to his crowded docket and the U S Supreme court has said that kind of attitude, that kind of concern is to be praised. It is to be admired, but it is not to be affirmed. The U S Supreme court said in Stanley versus Illinois, the constitution recognizes higher values than speed and efficiency. And the bill of rights was designed not with efficiency in mind, but to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials, no less, and perhaps more than mediocre ones. And in United States versus Booker, the U S Supreme court reminded us again. These delays, these inconveniences, these, these are the price that free nations must pay for their Liberty and more substantial matters. And your honor, judge Hawkins in United States versus Evanston. You said it as well. Um, the sacrifice of efficiency for the preservation of Liberty is central to the safeguard. The constitution affords criminal defendants and the government, including the courts may not cut corners when dealing with a man's freedom. That's what was happening in this trial. We were cutting, the trial court was cutting corners, praiseworthy, admirable, but unconstitutional. The last thing I, this panel would want to do in view of the overarching question about time limits is not allow you your full time, but you've made your point, if you want to go on further, you're welcome to, to use your remaining three minutes and seven seconds. I'm not trying to cut you off. Um, thank you, your honor. Um, I've got this, we've got this big book I wanted to read to you, but no, thank you. Um, I'd ask the court to, uh, affirm the district court below and, um, thank you for your time. Thank you, counsel. Thank you for your argument. Rebuttal. I have a question as you come up, if the trial had gone on and the defendant had taken the stand and after 15 minutes, the trial judge had said, that's it. We're done. Would that have been structural error? I think the Montana Supreme court foreshadowed that it would have considered that to be structural error. That 15 minutes was not a meaningful amount of time. Um, and that, that it would have reversed and sent it back. Go ahead. Just real quickly with regard to the vaccine clinic fact, you can find that in the record at 2035. Um, that I would just point out that this court has said, um, in United States versus Hay, that a lengthy separation, um, in that case, it was 48 days in a multi-month trial was so, it proposed such a risk of potential for problems that it was itself a due process issue. And that was in a criminal case. Um, also, also this court said, um, in the Walter Ease or Easy, I'm not exactly sure how he says it case, but in fact, uh, the threat of a sanction was, uh, in that instance, um, an actual conflict of interest with, um, between the defense attorney and the client. The court ultimately did not apply. Um, the, the, I guess I would call it a decreased burden of needing to prove prejudice. It's still required a proof of prejudice and an, um, ineffective assistance claim, but it has recognized that the threat of sanctions is in fact, an actual conflict. Also, I would just close by reminding that the U.S. Supreme Court in, um, Yorn or Jorn, I'm not sure how we pronounce that, um, reaffirmed the fact that although who benefited or who was intended to be the beneficiary of a decision, um, is not, not a deciding factor. It's not the only thing that the court can take into consideration, but it affirmed the fact that among the considerations for the court is the need to balance both the risk of government mischief and provoking a mistrial and the potential that, that the defense could abuse the right against double jeopardy and also provoke a mistrial. That both considerations are on the table. I think in this case, the court in its discretion, um, concluded that, uh, uh, that a fair trial was not ultimately possible in the time that remained and that its only option in order to protect the defendant's rights was to declare a mistrial. The state asks that you reverse the federal district court in this matter and affirm the trial court's decision. Thank you very much. Thank both counsel for their arguments. Very interesting case. Well briefed, well argued, and it's now submitted for decision and we'll stand in recess for the day.
judges: HAWKINS, FLETCHER, IKUTA